## JOHN WRIGHT *vs.* JONATHAN L. KING and others

First Circuit.

Wright
*vs.*
King.

If a party has a defence at law of which he is advised before the trial, and neglects to make it, or to apply to the court of chancery for a discovery, if necessary to his defence, in aid of the trial at law, he is precluded and cannot afterwards have relief in this court.

A court of chancery will compel a discovery in aid of a defence at law; nor can there be a doubt that it will stay proceedings at law, until an answer to the bill for discovery can be obtained.

To raise a trust by implication, there must be an actual payment of money.

To take the case out of the statute of frauds, the terms and conditions of the trust must be in writing under the hand of the party to be charged.

The bill in this case was filed 11th August, 1836, and stated that in the year 1832, the complainant and defendant, King, became jointly guarantors of and upon a certain promissory note made by one John Collins to John H. Kinzie, for the sum of $212, payable in 60 days.

That Daniel Goodwin and John Hale, (who were also defendants,) were securities or endorsers, either separately or with each other, or with King, upon other notes made by Collins—that Collins became embarrassed and absconded from the state without leaving any property or making any arrangement for the payment of his debts. That soon after Collins had absconded, John Hendree, (who was deceased at the time of filing the bill,) informed complainant that he had previously loaned said John Collins a sum of money, and for security for the payment of the money so loaned, James Collins, who was brother to said John Collins, had executed to him an absolute deed of conveyance of two certain lots of land in the city of Detroit, and proposed to complainant, if he would pay him the money he had loaned Collins, with the interest and proper charges, that he, Hendree, would deed said lots to complainant, which complainant agreed to do. That complainant immediately applied to Henry K. Avery, (who was deceased at the time of filing the bill,) cashier of the Farmers' and Mechanics' bank of Michigan, for a loan to pay Hendree the amount of his claim against Collins—that Avery agreed to loan complainant

the amount provided he would pay a debt of about $80, due the bank by said Collins, which complainant agreed to do on the sale of the lots.

During the pendency of the negotiation and before complainant had obtained the loan from the bank, he had a conversation with Goodwin respecting the affairs of Collins and the liabilities of Goodwin, Hale, King and complainant on his account, and in such conversation, complainant disclosed to Goodwin the arrangement he had made for his own indemnity, and stated that if he, Goodwin, and others interested, would pay to Hendree the amount of his claim and would satisfy the claim of the Bank of $80, and would also pay Jerry Dean $50 due him by said John Collins, and discharge complainant from all liabilities on said John Collins' account, and on the sale of the lots, after discharging the debts of said Collins for which Goodwin, Hale and King were responsible, pay over the residue of the proceeds of said lots to the wife of said Collins, that complainant would relinquish the contract made by him with Hendree, and permit the same to enure to the benefit of said Goodwin, Hale and King.

Shortly after this conversation, Goodwin informed complainant that he had seen Hale and King, and that they had agreed to accept the proposition of complainant, and the conveyance of the said lots was to be made to Goodwin, Hale and King. That on request of complainant a deed of conveyance of said lots was executed and delivered by Hendree to Goodwin, Hale and King. That the complainant, relying on the good faith of Goodwin, Hale and King, did not insist on the said understanding and agreement being reduced to writing, or on security on their part for its fulfillment.

That afterwards, Goodwin and Hale sold or disposed of their interest in the said lots to King, and King sold the same, or a part thereof, for about $3,000, which sum, the bill charged, was amply sufficient not only to pay Hendree's claim, the $80 due the bank, the $50 to Dean, and the note guaranteed by King and complainant to Kinzie, but also to pay and satisfy all the demands against the said John Collins for which said Good-

First Circuit.

Wright
*vs.*
King.

win, Hale and King were responsible, and leave a surplus for the wife of said Collins. The bill further stated that complainant and King were afterwards prosecuted in the circuit court of Wayne county, by said Kinzie, for the balance due on the note made to him by Collins and guaranteed by King and complainant, and recovered judgment, and issued execution thereon, which execution was paid by King. That afterwards, in 1835, King sued complainant in the circuit court of Wayne county, to recover one-half of the amount he had paid on the execution in favor of Kinzie, and obtained judgment against complainant for $147 47 damages, and $15 50 costs, and that execution had been issued thereon, and was about to be levied on the property of complainant.

The bill prayed for an injunction to restrain King from proceeding to collect any execution issued on said judgment, and for a discovery, &c.

Upon this state of facts, an injunction was granted according to the prayer of bill, by one of the justices of the supreme court, to stand until the further order of the court.

A motion was now made by King to dissolve the injunction and dismiss the bill, for want of equity.

A. D. Frazer, in support of the motion.

The facts alledged in the bill constitute a good defence to the action at law; and complainant shows he might have established the facts before a jury, but did not do so.

After a verdict or trial at law, it is too late to come to this court for discovery or relief. This court will not afford relief to a party on the ground that he has lost his remedy at law. He should have applied for a discovery before trial. *Le Guen* vs. *Gouverneur and Kemble*, 1 *John. Cas.*, 492, 502; *Duncan* vs. *Lyon*, 3 *J. C. R.*, 351; *Lansing* vs. *Eddy*, 1 *J. C. R.*, 51; *Smith* vs. *Lowry*, *Id.*, 320; *Barker* vs. *Elkins*, *Id.*, 465; *Penny* vs. *Martin*, 4 *J. C. R.*, 576; 5 *Peters' R.*, 503.

The statute of frauds is a perfect bar to the present bill.

To raise a trust by implication or operation of law, an actual payment, or actual loan of money, must be shown. *Steere* vs. *Steere*, 5 *J. C. R.*, 1. To take the case out of the statute of

fràuds, its terms and conditions must be in writing and signed by the party to be charged.

C. W. WHIPPLE, contra.

THE CHANCELLOR. It is a well established principle in equity, that if a party has a defence at law, of which he is advised before the trial, and neglects to make it, or to apply to this court for a discovery, if necessary to his defence in aid of the trial at law, he is precluded and cannot afterwards have relief in this court. (1.)

*Lord Hardwick* says, it must appear that the defendant was ignorant at the time of the trial, of the fact which renders the verdict at law contrary to equity; and even then, chancery will not relieve where the defendant submits to try it at law first, where he might, by a bill of discovery, have come at the facts by the plaintiff's answer before trial at law. (*See* 1 *John. Ch. R.*, 50.)

In 1 *Schoales and Lefroys' R.*, 201, *Lord Redesdale* says: "I do not know that equity ever does interfere to grant a trial of a matter which has already been discussed at law;" and at the close of the opinion, he says: "I think it unconscientious and vexatious to bring into a court of equity, a discussion · which might have been had at law."

In the court of errors in New York, in the year 1800, (1 *John. Ch.*, 436,) it was decided in a case involving a large amount, that where a party in a suit at law, has a knowledge of fraud or other matter of defence, and neglects to make his defence at law, a court of chancery will not interfere.

In the case of *McVickar* vs. *Wolcott*, 4 *J. R.*, 510, in 1808, Van Ness, Spencer and Kent on the bench, it was decided that a court of chancery will aid a defendant in obtaining a discovery before a trial, but not afterwards.

*Van Ness*, in giving his opinion, says: "granting that such answer would have furnished a complete defence, still as they omitted to take the necessary steps to possess themselves of that answer before the trial at law, which they might, and if they

deemed it important, ought to have pursued, they are now too late." The other judges concurred in the same conclusion.

In 1 *J. C. R.*, 51, chancellor Kent says: " the general rule is that this court will not relieve against a judgment at law, on the ground of its being contrary to equity, unless the defendant below was ignorant of the fact in question pending the suit, or it could not have been received as a defence. If a party will suffer judgment to pass against him by neglect, he cannot have relief here for a matter which he might have availed himself of at law."

In *Thompson* vs. *Berry*, 3 *J. C. R.*, 395, which was a cause of exceeding hardship, relief was granted as to that part of the demand to which no defence at law could have been made; but the court refused to interfere as to the balance, because the party had suffered judgment at law to pass against him, without making his defence or applying for discovery before the trial.

In the case of *Smith* vs. *Lowry*, 1 *Johns. Ch. R.*, 320, where an iniquitous judgment was obtained by subornation, the same rule was rigorously adhered to.

As the same question is involved in several cases now pending in this court, I have purposely referred, briefly, to the leading decisions made at different periods, both in England and this country, and by men who are universally acknowledged to have been the great luminaries in this branch of jurisprudence.

When we find such men as Lord Hardwick, Lord Redesdale, Van Ness and Kent, concurring in the same principles, it would almost be presumption to question the correctness and justice of those principles.

It remains only to apply these principles to the case under consideration. It was urged at the hearing, that, from difference of parties, an insurmountable difficulty existed in obtaining the aid of this court by a discovery prior to the trial at law. I cannot perceive any such difficulty. King, the party enjoined here, was either a party to the agreement to release and indemnify the complainant from all his liabilities for Col-

lins, and among others the note to Kinzie, or he was not. If he was not a party to that agreement, he is not bound by it; and it would be unjust and contrary to equity to enjoin and inhibit him from the collection of Wright's proportion of their joint liability. If King was a party to that contract, a discovery of that fact might have been obtained by a bill for that purpose in this court, and it would have been a perfect defence to the action at law by King against the complainant; nor can there be a doubt that a court of chancery would have stayed proceedings at law, until an answer to the bill for discovery could have been obtained. But, from the case made by the bill, it would seem that the complainant had a defence at law, without resorting to a court of chancery. According to the statement in the bill, Goodwin knew all the facts, and what the contract was; and I cannot perceive on what grounds King could have objected to the introduction of Goodwin as a witness, on the trial of the suit at law, between King and the complainant.

It occurred to me at the hearing, that it was possible that the bill could be sustained on the ground of the trust, as urged in the argument; but, upon further examination, and on the authority of the case in 5 *Johns. Ch. R.*, 1, I am satisfied that it cannot.

To raise a trust by implication, there must be an actual payment of money; and to take the case out of the statute of frauds, the terms and conditions of the trust must be in writing, under the hand of the party to be charged. There may be other special circumstances where courts have declared a trust, none of which exist here.

Upon the whole, I am of the opinion that the injunction cannot be sustained, but must be dissolved.

Injunction dissolved.

(1) Where a party to a suit at law has knowledge of a fraud or other matter of defence in time to avail himself of it, at the trial at law, and he neglects to do so, he cannot afterwards obtain relief in a court of equity against the judgment at law, on the ground of such fraud or matter of defence which he might have set up at the trial; but is forever concluded by the judgment, *Le Guen vs. Gouverneur*, 1 *John. Ca.*, 436.

The Court of Chancery must be satisfied that a party has justice in his cause, of which he could not avail himself at law, before it will interfere. *Irby vs. McCrea*, 4 *Desau R.*, 422. Where there is a good defence at law, equity will not relieve, except the party was prevented

First Circuit.

Wright
*vs.*
King.

from making his defence, by circumstances not attributable to his neglect or inattention.— *Cunningham* vs. *Caldwell*, Hardin R., 173; *Cowell* vs. *Price*, 1 Bibb R., 173; *Reeves* vs. *Hogan*, Cooke R., 175; *Overton* vs. *Leary*, Id., 36; *Winthrop* vs. *Lane*, 3 Desau. R., 323; *Gatlin* vs. *Kirkpatrick*, 1 Car. Law Rep., 584; *Lee* vs. *Bates*, 2 Oh. Ca., 95; *Williams* vs. *Lee*, 3 Atk. R., 223.

A bill for a discovery comes too late after a trial at law; it should have been filed pending the suit at law, so that the facts disclosed in the answer might have been used as evidence before the jury. *Thurmond* vs. *Dunham*, 3 Yerger R., 99.